UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : Civil Case No. |
| v. | : 1:05-CV-05443 (DLC) |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., RYAN BRANT, LARRY MULLER, JAMES DAVID, JR. and ROBERT BLAU | : |
| Defendants. | : |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN ORDER APPROVING THE FINAL ACCOUNTING, TERMINATING THE COMBINED FAIR FUND, DISCHARGING THE FUND ADMINISTRATOR, AND RELATED RELIEF**

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this memorandum in support of its Motion for an Order Approving the Final Accounting, Terminating the Combined Fair Fund, Discharging the Fund Administrator, and Related Relief (the "Motion"). This relief, if granted, will close the distribution in this matter.

## I. PROCEDURAL BACKGROUND

On June 9, 2005, the SEC filed its Complaint in this action against: Take-Two Interactive Software, Inc. ("Take-Two"); the company's former Chairman and Chief Executive Officer, Ryan Brant ("Brant"); its former Executive Vice President and Chief Operating Officer, Larry Muller ("Muller"); its former Chief Financial Officer, James David, Jr. ("David"); and its then-current Vice President of Sales, Robert Blau ("Blau"). Dkt. No. 1. In its Complaint, the SEC alleged that the defendants engaged in fraudulent accounting practices designed to inflate Take-Two's reported revenue during fiscal years 2000 and 2001. These practices allowed Take-Two to consistently meet or exceed analysts' predictions regarding its earnings per share during all four quarters of fiscal year 2000 and to

meet certain financial targets which triggered the payment of substantial bonuses to Brant, Muller and David.

On June 13, 2005, this Court entered Final Judgments by consent against defendants, ordering: (1) Take-Two to pay a penalty of $7,500,000 and disgorgement and prejudgment interest of $1; (2) Brant to pay a penalty of $500,000 and disgorgement and pre-judgment interest of $3,103,252; (3) Muller to pay a penalty of $500,000 and disgorgement and pre-judgment interest of $1,215,720; (4) David to pay a penalty of $200,000 and disgorgement and pre-judgment interest of $739,949; and (5) Blau to pay a penalty of $50,000 and disgorgement and pre-judgment interest of $64,508, injunctive relief, and officer or director bars of varying lengths against Brant, Muller and David.  Dkt. Nos. 2-6.  Defendants paid their respective obligations in full (the "Distribution Fund"), and the Clerk of this Court (the "Clerk") deposited the funds in an interest bearing account in the CRIS system (the "Take-Two CRIS Account").

By Order entered March 19, 2007, the Court appointed Damasco & Associates LLP ("Damasco")[1] as tax administrator (the "Tax Administrator") for the funds held in the Distribution Fund.  Dkt. No. 11.

The SEC subsequently filed and settled charges against Brant for his alleged role in a stock options backdating scheme at Take-Two. *See SEC v. Ryan Ashley Brant*, Civil Act. No. 1:07-CV-1075-DLC (S.D.N.Y.) (the "Brant Action").  In that action, Brant consented to an injunction and a permanent officer and director bar and agreed to pay $6,261,606 to the Registry of the Court.  This amount consisted of Brant's disgorgement of his "in-the-money" benefit from options backdating ($4,118,093), plus prejudgment interest thereon ($1,143,513),

---

[1] Effective October 1, 2016, Miller Kaplan Arase LLP ("Miller Kaplan"), a certified public accounting firm, purchased the assets of Damasco and Damasco's partners and staff, including those providing tax administrator services in this case, are now part of Miller Kaplan.

2

and payment of a penalty ($1 million).  These funds were also placed in a CRIS account (the "Brant CRIS Account").

## II. THE COMBINED FAIR FUND AND THE FUND ADMINISTRATOR

By Order entered December 11, 2009, the Court created a Fair Fund under Section 308(a) of the Sarbanes-Oxley Act of 2002 for the purpose of distributing the money in the Brant CRIS Account (the "Brant Fair Fund") and appointed A.B. Data, Ltd. ("A.B. Data") as the fund administrator.  *See SEC v. Brant*, Civil Act No. 1:07-CV-1075-DLC (S.D.N.Y.), Dkt. No. 29.  The Court in the Brant Action ordered that the distribution of the Brant Fair Fund be handled jointly with a distribution in a class action pending against Take-Two, Brant, and others, *In re Take-Two Interactive Securities Litigation*, Civil Act. No. 1:06-CV-803-RJS (S.D.N.Y.) (the "Class Action"), which provided for the distribution of $20,115,000, together with interest thereon, less attorneys' fees, expenses, and costs of administration, to class members (the "Class Action Fund").  The Class Action alleged stock options backdating as well as misstatements and omissions in connection with the inclusion of sexually explicit material in Take-Two's then-premier product, Grand Theft Auto: San Andreas.

By Ordered entered March 21, 2011, the Court created a Fair Fund under Section 308(a) of the Sarbanes-Oxley Act of 2002 for the purpose of distributing the money in the Take-Two CRIS Account (the "Take-Two Fair Fund") and appointed A.B. Data as the fund administrator (the "Fund Administrator").  Dkt. No. 41.  The Court in the Take-Two Action ordered that the Fund Administrator establish a distribution account at The Huntington National Bank, bearing the name, "Take-Two Combined Settlement Fund Distribution Account," into which the Take-Two Fair Fund was combined with the settlement funds paid by Take-Two in the Class Action and the settlement funds paid in the Brant Action (collectively, the "Combined Fair Fund").

3

### III.     DISTRIBUTION OF THE COMBINED FAIR FUND

**A.     The Plan**

By Order entered March 21, 2011, the Court approved the plan for the distribution of the Combined Fair Fund (the "Plan").  Dkt. No. 41.  Under the Plan, investors who purchased or otherwise acquired the publicly traded common stock of Take-Two on or after January 31, 2000, and either sold it after July 31, 2003 or continued to hold it, and who suffered an aggregate loss yielding a pro rata distribution among of at least $10 were otherwise determined eligible by the Fund Administrator ("Eligible Claimants"), would receive a distribution.  *Id.*, at ¶ 8(F)(1).  Recognized losses for each investor were calculated according to the methodology described in the Plan of Allocation in the Class Action and the Brant Action.  *Id.*, at ¶ 8(F)(3).  Investors with claims approved by the Fund Administrator were to be paid *pro rata* from the Combined Fair Fund, in accordance with the percentage that the amount of each approved claim bears to the total amount of all claims.  *Id.*, at ¶ 8(F)(5).

**B.     The Initial Distribution**

By Order entered August 25, 2011, the Court directed the Clerk to transfer all monies, inclusive of all interest earned, less CRIS fees, to the to The Huntington National Bank for distribution to Eligible Claimants in accordance with the Plan.  Dkt. No. 43.

Pursuant to the Plan, on November 14, 2011, the Fund Administrator began the mailing of distribution checks to Eligible Claimants (the "Initial Distribution").  *See* Declaration of Eric Schachter at ¶ 5, attached as Exhibit A (hereafter referenced as Exh. A at ¶ ___).  The Fund Administrator disbursed $14,782,987.76 to 2,622 Eligible Claimants.  Exh. A at ¶ 7.  The Fund Administrator monitored the status of all checks issued in order to maximize the number of checks cashed.  Among other things, the Fund Administrator called Eligible Claimants for

which it could find a telephone number and which had not cashed their check.  The Fund Administrator further researched new addresses for Eligible Claimants whose packages were returned as undeliverable. Exh. A at ¶ 7.  Ultimately, the Fund Administrator successfully distributed to Eligible Claimants $14,426,860.69, or approximately 97.6% of the amount disbursed.  Exh. A at ¶ 7.

### C.    The Second Distribution

On October 27, 2014, the Fund Administrator began the mailing of a second distribution to Eligible Claimants who cashed their Initial Distribution checks.  Exh. A at ¶ 8.  The Fund Administrator disbursed $299,763.30 to 937 Eligible Claimants.  Exh. A at ¶ 9.  The second distribution resulted in the distribution of $298,696.10, or approximately 99.6% of the amount disbursed.  *Id.*

Pursuant to Paragraph 8(U) of the Plan, the Fund Administrator has transferred the remainder in the Combined Fair Fund of $1,924.43 to the SEC.  Dkt. No. 41, at ¶ 8(U). Commission staff has confirmed it holds the funds for transmission to the United States Treasury ("Treasury").

### IV.    THE COMBINED FAIR FUND BALANCE

All outstanding costs of the Tax Administrator for tax compliance and information return reporting services have been paid.  Exh. A at ¶ 10, 11.  The current Combined Fair Fund balance is $1,924.43.  The Fund Administrator has completed all tasks required by the order approving the Combined Fair Fund and Plan, Dkt. No. 41, and recommends closing the administration of the Combined Fair Fund.  *Id.*

## V.   THE DISTRIBUTION IS COMPLETE AND THE COMBINED FAIR FUND IS ELIGIBLE FOR TERMINATION

As described in the Declaration of Eric Schachter, the Fund Administrator distributed $14,725,556.79. The Combined Fair Fund currently resides at the SEC and holds $1,924.43.

Upon completion of the distribution, paragraph 8(U) of the Plan provides for the remission of the residual to the SEC for transfer to the Treasury.  Dkt. No. 41, at ¶ 8(U).  The Plan further provides that the Combined Fair Fund shall be eligible for termination, and the Fund Administrator eligible for discharge, after all of the following have occurred:  (1) the final accounting has been submitted and approved by the Court, (2) all taxes and fees have been paid, and (3) all remaining funds or any residual have been paid to the SEC for transfer to the Treasury or distributed to Eligible Claimants.  *Id.*, at ¶ 8(V).

The Fund Administrator has transferred the Combined Fair Fund balance to the SEC. Accordingly, the SEC respectfully requests that the Court approve this final accounting, as supported by the Declaration of Eric Schachter and the citations herein; direct the SEC to transfer the remainder to the general fund of the Treasury, subject to Section 21F(g)(3) of the Securities Exchange Act of 1934 ("Exchange Act");[2] direct that any funds returned to the Combined Fair Fund in the future be remitted by the SEC to the general fund of the Treasury, subject to Section 21F(g)(3) of the Exchange Act; terminate the Combined Fair Fund; and discharge the Fund Administrator.

---

[2] Section 21F(g)(3) of the Exchange Act, 15 U.S.C. § 78u-6(g)(3), provides, in relevant part, that any monetary sanction of $200 million or less collected by the SEC in any judicial action brought by the SEC under the securities laws that is not added to a disgorgement fund or fair fund or otherwise distributed to victims plus investment income shall be deposited or credited into the SEC Investor Protection Fund.

## **CONCLUSION**

Wherefore, the SEC respectfully requests that the Court enter the Order submitted with this memorandum.

Dated:  August 3, 2018	Respectfully submitted,

/s/ Nancy Chase Burton
Nancy Chase Burton
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5876
Telephone:  (202) 551-4425
Facsimile:   (202) 772-9363
Email:  burtonn@sec.gov

(Exh. A)